# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 16-3829

XAVIER LAURENS and KHADIJA LAURENS,

*Plaintiffs-Appellants*,

*v.*

VOLVO CARS OF NORTH AMERICA, LLC,
and VOLVO CAR USA, LLC,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16 C 4507 — **Harry D. Leinenweber**, *Judge*.

ARGUED APRIL 4, 2017 — DECIDED AUGUST 22, 2017

Before WOOD, *Chief Judge*, and KANNE and ROVNER, *Circuit Judges*.

WOOD, *Chief Judge*. The idea of a theme and variations is a common one in music. It should be in law, too. Here we return to the familiar theme of a defense effort to pretermit a proposed class action by picking off the named plaintiff's claim. Several variations on that theme have been tried and have failed. See *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016)

(Rule 68 offers of judgment); *Fulton Dental, LLC v. Bisco, Inc.*, 860 F.3d 541 (7th Cir. 2017) (Rule 67 payments to court registry).

Undeterred, the defendant in the case now before us asserts that an unaccepted offer of relief *before* a putative plaintiff files a lawsuit deprives that plaintiff of standing. We see no reason why the timing of the offer has such a powerful effect. Black-letter contract law states that offers do not bind recipients until they are accepted. See, *e.g.*, ALI Restatement (Second) of Contracts § 17 (1981). Hence while the legal effect of every variation on the strategic-mooting theme has not yet been explored, we are satisfied that an unaccepted pre-litigation offer does not deprive a plaintiff of her day in court.

# I

This case, at base, is about a car purchaser's disappointed expectations. The cars are Volvos, and the dispute centers on the difference between the model XC90 and the XC90 T8 ("the T8"). Both are luxury SUVs, but the XC90 runs on gas, whereas the T8 is a plug-in hybrid. The latter feature comes at a premium; the 2016 T8 retailed for around $20,000 more than its gas-only sibling. Plaintiffs Xavier and Khadija Laurens overcame the sticker shock and paid $83,475 for a new T8. They also purchased, for an additional $2,700, a charging station that was installed in their garage.

The Laurenses quickly realized that the car they bought fell short of the car the ads had promised. Volvo's advertisements had claimed that the T8's battery range was 25 miles, and the Laurenses had relied on this representation when deciding to purchase that model for a premium price. In practice their T8 averaged a puny eight to ten miles of battery-only

driving, far below the promised distance. On April 21, 2016, Xavier filed this action, both on his own behalf and for a class of others similarly situated. He relied on the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), for subject-matter jurisdiction, because he was a citizen of Illinois, whereas Volvo Cars USA is a Delaware limited liability company controlled by Volvo Cars of North America (another Delaware LLC), which is itself wholly owned by its Swedish parent (a publicly traded, share-based limited liability company, or AB, with its principal place of business in Gothenburg, Sweden), and the aggregate amount in controversy exceeds (he asserted) $5,000,000. For himself, Xavier sought damages equal to the premium he paid for the hybrid model ($20,000), the cost of the charging station ($2,700), injunctive relief, punitive damages, and attorney's fees.

The complaint's core theory was that Volvo's misleading advertising caused Xavier to pay the extra money for the hybrid version of the car. A wrinkle arose when it turned out that Xavier was not listed on either the car's purchase agreement or the title; only Khadija was. On June 8, 2016, the Laurenses received a letter from Volvo that offered "immediately" to give Khadija (but not Xavier) "a full refund upon return of the vehicle if you are not satisfied with it for any reason" and to "arrange to pick up your vehicle at your home." The next day Volvo moved to dismiss Xavier's suit on the theory that he lacked standing; it argued that Khadija, the titleholder, was the only person with any possible injury, and she was not at that moment a party. Before the district court ruled on the motion, the Laurenses added Khadija to the complaint. Volvo responded with a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1); its motion contended that Khadija also lacked standing because its letter had

offered complete relief for her *before* she filed suit. The district judge agreed with Volvo, finding that Xavier had never suffered an Article III injury and that Volvo's offer had redressed Khadija's injury before she became a party. The court dismissed the action, and this appeal followed.

## II

While the Constitution does not define the precise extent of "[t]he judicial Power of the United States," it does say that this power is limited to "Cases" and "Controversies," U.S. CONST. art. III §§ 1, 2. This requires federal courts to police their own authority, so that they do not entertain matters outside the scope of these terms. Of the several doctrines that perform the policing task, the one with which we are concerned is standing. The Supreme Court has said that "the irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). In the Court's words, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

At the pleading stage, it is normally not difficult to pass the standing bar. Plaintiffs need only "'clearly … allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). Things get more complicated when the defendant challenges a plaintiff's standing in a motion to dismiss for want of Article III jurisdiction, pursuant to Rule 12(b)(1). District courts deciding such motions "must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor, *unless* standing is challenged as a factual matter." *Remijas v.*

Case: 16-3829    Document: 00713069631    Filed: 09/13/2017    Pages: 14

*Neiman Marcus Grp., LLC*, 794 F.3d 688, 691 (7th Cir. 2015) (emphasis added) (quoting *Reid L. v. Ill. State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004)). If a defendant raises a factual challenge to standing, the plaintiff bears the burden of proving standing by a preponderance of the evidence. *Kathrein v. City of Evanston, Ill.*, 636 F.3d 906, 914 (7th Cir. 2011). We review the district court's standing decision *de novo*, accepting any underlying factual findings unless they are clearly erroneous. *Winkler v. Gates*, 481 F.3d 977, 982 (7th Cir. 2007).

Causation and redressability are not in question here. The Laurenses maintain that Volvo caused their injury by misleading them, and they seek damages that would redress the financial harms that flowed from the misrepresentation. Their complaint also includes a request for injunctive relief, but it is premature for us to say whether they do or do not have standing for this part of the case. On the one hand, even an individual plaintiff "bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). That means that either Xavier or Khadija had to demonstrate a stake in injunctive relief in particular. In *Summers*, the plaintiffs failed to meet that burden, because the parties had settled their dispute with respect to the only national forest in which they had a personal stake, and Volvo suggests that the Laurenses' claim for injunctive relief should fail for similar reasons. Once burned, twice shy, it argues: how will either Xavier or Khadija ever be fooled again by its advertising? But there is another side to this argument. First, unlike the plaintiffs in *Summers*, as we discuss below, the question whether the underlying dispute has been settled is a live one. Second, the fact that the Laurenses are seeking to serve as class representatives complicates matters. The Supreme Court held in *United States Parole Comm'n v.*

*Geraghty*, 445 U.S. 388 (1980), that "an action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied." *Id.* at 404. "When the claim on the merits is 'capable of repetition, yet evading review,' the named plaintiff may litigate the class certification issue despite loss of his personal stake in the outcome of the litigation." *Id.* at 398. This may be one of those situations: at some point each class member will discover that the performance of the T8 falls far short of what was promised. But that is a different form of pick-off. Moreover, if the Laurenses' real dispute is that Volvo engages in misleading advertising more generally, then the fact that one lie has been uncovered may not, in fact, resolve the full dispute.

These matters were not explored in any detail in the district court, because of its conclusions that Xavier has no claim and the offer of relief to Khadija killed the case before it began. The question whether those conclusions are correct is squarely before us. If either named plaintiff has a live damages claim that will support injury-in-fact, further proceedings will be necessary, and that would be the best time to explore whether either one also has standing to pursue any type of injunctive relief. Since Volvo has not raised a factual challenge to causation or redressability, and the latter allegations appear sufficient to us, we consider these requirements to be satisfied.

### III

The outcome of this case thus turns on injury-in-fact—in particular, on who was injured and whether any such injury had already been fully redressed by the time the injured party was involved in the litigation. We begin with the "who," and

we discuss Xavier first. Volvo's motion to dismiss asserted that Xavier suffered no injury-in-fact because his name does not appear on either the purchase agreement for the T8 or the title. The Laurenses respond that those documents reflect only who *owned* the vehicle, not who *purchased* it. But that is not accurate. Hypothetically, Xavier could have bought the car and given it to Khadija, but that is not what the documents show. Instead, it is Khadija's name that appears on the purchase agreement. This indicates that she not only owns the T8, but also that she bought it. It does not matter that Volvo's evidence does not definitively indicate who furnished the funds. That was not its burden. All Volvo needed to do was to challenge Xavier's standing as a factual matter, and the documentation it provided was enough to do so. That put the ball in the Laurenses' court; it became their burden to "com[e] forward with competent proof that standing exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (internal quotation marks omitted). With respect to Xavier, they did not provide any such evidence. Their failure to do so means that Xavier has not alleged the personal injury-in-fact that must exist for him to have standing to sue over the T8 purchase.

The Laurenses have one more theory with respect to Xavier: they argue that he has standing based on his purchase and installation of the $2,700 charging station for the T8. Here again the Laurenses rely solely on the allegations in their complaint. As far as it goes, that is enough, because Volvo points to no facts contradicting the complaint's allegations, which we thus take as true. *Remijas*, 794 F.3d at 691. But if all he has is the charging station, Xavier has a different jurisdictional problem. There is no indication that CAFA jurisdiction would lie for this part of the case, and on an

individual basis a $2,700 claim is so far below the $75,000 amount-in-controversy requirement that we can say that it appears to a legal certainty that his claim falls below the necessary amount. See 28 U.S.C. § 1332(a); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938).

By now, however, Xavier is not the only plaintiff. Khadija was added as a plaintiff on June 29, 2016, after Volvo sent its offer of settlement but long before the district court's October 13, 2016 order of dismissal. If Khadija has standing, her case can move forward. At that point, if the court concludes that CAFA jurisdiction is proper (a question on which we make no comment), then supplemental jurisdiction would likely extend to Xavier's related claim. See *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (citing 28 U.S.C. § 1367(a)). With that in mind, we turn to Khadija's standing.

Khadija undoubtedly would have an injury-in-fact if Volvo had not offered a refund, and we will assume for the sake of argument that she would not have an injury if she had accepted its offer. But neither of those things happened. Instead, we must decide what happens if an offer is made before the person sues (or, as here, joins an existing action), but that offer is not accepted.

The Supreme Court's most recent foray into this general area is *Campbell-Ewald*. Even though it dealt with mootness rather than standing, the opinion is nonetheless instructive. Volvo's position is that Khadija lacked standing at the moment she was added as a plaintiff. Since "mootness [is] the doctrine of standing set in a time frame," *Geraghty*, 445 U.S. at 397, we begin with a closer look at *Campbell-Ewald*.

In that case, putative class representative José Gomez sued the Campbell-Ewald Company for allegedly violating the Telephone Consumer Protection Act. Before Gomez moved for class certification, Campbell-Ewald submitted an offer of judgment under Federal Rule of Civil Procedure 68 that would have provided Gomez complete relief on his individual claim. When he did not accept, the company argued that its offer alone was enough to moot the case.

The Supreme Court saw things otherwise. It held that "an unaccepted offer to satisfy [a] named plaintiff's individual claim [is not] sufficient to render a case moot when the complaint seeks relief on behalf of the plaintiff and a class of persons similarly situated." *Campbell-Ewald*, 136 S. Ct. at 666. The key analogy, repeated throughout the opinion, was to contract law: "An unaccepted settlement offer—like any unaccepted contract offer—is a legal nullity, with no operative effect." *Id.* at 670 (quoting *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1533 (2013) (Kagan, J., dissenting)); see *id.* at 666, 670, 672 (other comparisons to contract law). The contract framework was not confined to the majority opinion. Justice Thomas concurred because his examination of the common law history "demonstrate[d] *that a mere offer of the sum owed* is insufficient to eliminate a court's jurisdiction to decide the case to which the offer related." *Id.* at 674 (Thomas, J., concurring) (emphasis added). In the end, six Justices agreed that an unaccepted offer of relief, like "other unaccepted contract offers … creates no lasting right or obligation." *Id.* at 666 (majority opinion).

The only salient differences between this case and *Campbell-Ewald* are that Volvo made its offer before Khadija sued, and it communicated the offer through a generic letter

instead of Rule 68's more formal process. Neither distinction matters. Nothing about *Campbell-Ewald*'s reasoning is confined to Rule 68, which is precisely why we extended its holding to Rule 67 in *Fulton Dental,* 860 F.3d 541. As we noted in that opinion, there is

> no principled distinction between attempting to force a settlement on an unwilling party through Rule 68, as in *Campbell-Ewald*, and attempting to force a settlement on an unwilling party through Rule 67. In either case, all that exists is an unaccepted contract offer, and as the Supreme Court recognized, an unaccepted offer is not binding on the offeree.

*Id.* at 545. If forcing a contract on an unwilling party is unacceptable under the judicially supervised procedures of Rule 68 and Rule 67, we see no reason why an impersonal note offering a refund should have such a powerful effect. Nor does it matter that Volvo's offer preceded Khadija's lawsuit. *Campbell-Ewald*'s core lesson is that unaccepted contract offers are nullities; settlement proposals are contract offers; and therefore unaccepted settlement proposals are nullities. Nothing about that logic turns on whether a suit has been filed.

*Campbell-Ewald*'s contractual approach is, if anything, a better fit for claims that have not reached the courthouse. The Supreme Court has long held "that a cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)); see also *id* at. 429 (approaching Fifth Amendment's Due Process Clause the same way). The Court

has applied this rule expansively, in contexts ranging from international relations to banking to employment law. *E.g. Dames & Moore v. Regan*, 453 U.S. 654 (1981); *Mullane*, 339 U.S. 306; *Logan*, 455 U.S. 422. The bankruptcy code also counts legal rights among the types of property that can support bankruptcy claims. See *In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 659 (7th Cir. 2010). Everyday litigation confirms that understanding. The reason parties settle cases is because both sides understand that legal claims have monetary value, just like any other form of property. Volvo's offer to trade Khadija's claim for $83,475 illustrates the point: it sought to trade one form of property (claim) for another (currency).

Any first-year law student knows that contract formation requires offer, acceptance, and consideration. Whether we characterize the deal Volvo was proposing as a swap of a car for money (as we suggested earlier) or a swap of a claim for money (dropping the claim in exchange for $83,475), until there is an acceptance there is no contract. (We take no position on which is the better description.) Khadija considered the trade and found it wanting. Whether she did so because of the cost of the charging station, or because she wanted additional damages for Volvo's betrayal, or she wanted to be reimbursed for the nuisance of a short-range electric car, or she wanted a bonus for serving as a class representative, is beside the point. Volvo has no right preemptively to force her to accept a contract offer. Indeed, an offeror is almost never permitted to *force* acceptance on an unwilling offeree. ALI Restatement (Second) of Contracts §§ 17, 50–70, 159–77; see also *Campbell-Ewald*, 136 S. Ct. at 672 ("In sum, an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case."). Consider what this case would look like if the parties' roles were reversed. Khadija could not argue that she had the

right unilaterally to compel an unwilling Volvo to trade a full refund in exchange for her claim. Our legal system places a premium on property rights, and protecting them is among the judiciary's most important functions.

Volvo's position is also at odds with the traditional rule that "a mere offer" does not strip the court of jurisdiction. *Campbell-Ewald*, 136 S. Ct. at 675 (Thomas, J., concurring). Plaintiffs may opt for trial in the face of offers far more concrete than Volvo's letter; they could even reject "tender," which was "an offer to pay the entire claim before a suit was filed, accompanied by 'actually produc[ing]' the sum 'at the time of tender' in an 'unconditional' manner." *Id.* at 675 (quoting M. BACON, A NEW ABRIDGMENT OF THE LAW, 314–15, 321 (1856)).

While *Campbell-Ewald* dictates the outcome here, we note that pragmatic considerations point in the same direction. Both of the *Campbell-Ewald* dissents argued that some Rule 68 offers could moot claims, but only if the defendant makes "absolutely clear" that it will pay the relief it has offered. *Id.* at 683 (Alito, J., dissenting); *id.* at 680 (Roberts, C.J., dissenting). This was not a passing concern—Justice Alito stressed that the inevitability of payment was "the linchpin for finding mootness in this case." *Id.* at 683 (Alito, J., dissenting). Certainty may be in the eye of the beholder, and so some plaintiffs may contend that it is not clear enough that a defendant will make good on an offer of relief. Nonetheless, when offers are made during litigation, judicial oversight should mitigate the uncertainty: a defendant's failure to follow through would incur the wrath of the supervising court, and egregious misconduct might lead to sanctions. Those safeguards do not apply to of-

fers made before the lawsuit begins. Here, if Khadija had accepted Volvo's offer and then Volvo had failed to pay, she would be right back where she started, with a new breach of contract claim.

## IV

Since Khadija did not accept Volvo's offer, her injury-in-fact from Volvo's alleged misrepresentations remains unredressed. We therefore REVERSE the judgment of the district court dismissing this case for lack of standing and remand for further proceedings consistent with this opinion.

KANNE, *Circuit Judge*, concurring. I join in the majority's opinion reversing and remanding the district court's decision for further consideration. I write separately to further emphasize that on remand the district court is free to draw, or not to draw, the conclusion that Khadija has not met her burden to show standing for injunctive relief.

CERTIFIED COPY
A True Copy
Teste:

_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit